IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2001

## STATE OF TENNESSEE v. JOSEPH E. SKELTON

**Extraordinary Appeal from the Criminal Court for Knox County**
**No. 68410     Ray L. Jenkins, Judge**

---

**No. E2000-02255-CCA-R10-CO**
**November 7, 2001**

---

Following Defendant's conviction for aggravated assault, this Court granted his application for extraordinary appeal pursuant to Tenn. R. App. P. 10 to determine whether a second trial on the matter of guilt for attempted first degree murder, an offense charged in Defendant's first trial but upon which the jury could not reach a unanimous verdict, would violate principles of double jeopardy. After a review of the facts and relevant law, we dismiss the count of the presentment charging attempted first degree murder and remand this case for sentencing on his conviction for aggravated assault.

**Tenn. R. App. P. 10 Appeal by Permission; Judgment of the Trial Court Reversed;
Remanded for Sentencing for Conviction of Aggravated Assault.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Mark E. Stephens, District Public Defender; David Gall, Assistant Public Defender; and Paula R. Voss, Assistant Public Defender, for the appellant, Joseph E. Skelton.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In a presentment, the Knox County grand jury charged the defendant, Joseph E. Skelton, with attempted first degree murder and aggravated assault in separate counts. The matter went to trial on November 8, 1999. At the conclusion of proof, the jury unanimously found Defendant guilty of aggravated assault, based on his plea of guilt for this offense, but was unable to reach a unanimous verdict on the attempted first degree murder charge or the lesser-included offenses of attempted second degree murder and attempted voluntary manslaughter. Upon hearing this report, the trial court summarily dismissed the jury without further inquiry. After the jury had retired from the

courtroom, the State announced its intention to retry Defendant on the attempted first degree murder charge, and the trial court set the date for the second trial for March 7, 2000.

On February 15, 2000, Defendant filed a motion to dismiss the charge of attempted first degree murder on the ground that a second trial would violate state and federal constitutional safeguards against double jeopardy. The trial court denied Defendant's motion to dismiss, as well as his later motion for interlocutory appeal pursuant to Tenn. R. App. P. 9. On October 13, 2000, this Court granted Defendant's application for extraordinary appeal pursuant to Tenn. R. App. P. 10, which is the matter presently before this Court.

**Factual Background**

On December 23, 1996, the defendant, Joseph E. Skelton, assaulted Joseph Sexton with a hammer and fractured his skull. Sexton was in the business of selling mobile homes, one of which Defendant had recently purchased. The assault was the result of an altercation which had erupted over Defendant's dissatisfaction with his purchase. Because Defendant believed that Sexton did not honor his agreement concerning the sale, he went to Sexton's place of business to discuss his grievances. When the discussion became heated, Sexton decided to telephone the police department to request assistance in removing Defendant from his premises. Sexton began walking toward the office of a water treatment company located nearby. He frequently borrowed that company's telephone since he did not have one at his business. Defendant followed him. Sexton and Defendant were still arguing loudly as Sexton entered the water treatment office. Defendant entered the office behind Sexton and hit him on the head with a hammer while he was using the telephone.

The persons present during the assault immediately pulled Defendant away from Sexton and ordered Defendant to get off the premises. Sexton's head was bleeding profusely, but he remained standing. William Eaton, the owner of the water treatment business, spoke with Defendant briefly and watched him leave. Defendant walked to the mobile home lot, threw the hammer onto the steps of one of the homes, and then drove away in a vehicle. The police stopped Defendant shortly thereafter.

Eaton testified that Defendant hit the victim once and did not attempt to injure anyone else. When Eaton asked Defendant to leave, Defendant looked "panicky" and did not argue with him. Instead, Defendant told Eaton that they should call the police, and Eaton replied that this had been done. Shortly thereafter, Defendant wandered back to his car and drove away.

At trial, Defendant testified that he had numerous problems with the trailer Sexton had sold him and that Sexton had not fulfilled his obligations to Defendant concerning the sale. As a result, Defendant and his family were without a place to live and did not have the money to find other accommodations. Defendant testified that he visited Sexton's place of business on December 23, 1999, hoping to come to some type of agreement. He pleaded with Sexton for assistance, but Sexton refused to help him and would not refund his money. Sexton told Defendant that he was "screwed" and there was "nothing he could do about it."

Upon hearing this statement from Sexton, Defendant lost his temper. He grabbed Sexton and a hammer sitting nearby. Sexton pushed Defendant back and walked away. Defendant claimed that he "kinda blacked out" at that point. He recalled following Sexton, but many of the subsequent events were unclear. For instance, Defendant did not recall walking into the water treatment office or swinging the hammer at Sexton's head. Defendant recalled leaving the scene to take his children to be with his wife and stopping at a pay telephone to dial 911. At that time, a police car drove by and Defendant flagged him down. The police officer stopped. After Defendant explained to the officer what had happened, the officer arrested him.

Defendant further testified that he never intended to harm Sexton; he merely wanted the things Sexton had promised him. Defendant conceded that he "lost it" when Sexton refused his requests, and he expressed great remorse for his conduct.

Dr. Blaine Enderson, a surgeon at the University of Tennessee Medical Center trauma center, testified that Sexton suffered a "depressed skull fracture with underlying brain injury" as a result of the blow from the hammer. Some hemorrhaging was also present. Dr. Enderson testified that this type of injury may be classified as "life-threatening" and that permanent brain damage was possible.

At the conclusion of proof, the trial court informed the jury that Defendant had pled "guilty" to the charge of aggravated assault and "not guilty" to the charge of attempted first degree murder. After the trial court instructed the jury on these offenses, as well as the lesser-included offenses of attempted second degree murder and attempted voluntary manslaughter, the jury began its deliberation. Later that same day, the jury reported that it found Defendant guilty of aggravated assault, "since he confessed," but failed to reach a unanimous verdict on attempted first degree murder or the lesser-included offenses to that charge. Specifically, the record reveals that the following colloquy occurred:

| | |
|---|---|
| Court: | All right. Who is the foreman? Mrs. Morris? |
| Forelady: | Yes. |
| Court: | All right. Have you reached a verdict? |
| Forelady: | No. We-- |
| Court: | Pardon? |
| Forelady: | No, we haven't. We cannot come to a conclusion. We have not reached a verdict. |
| Court: | Oh, all right. We, don't tell me which way-- |
| Forelady: | Okay. |
| Court: | --but tell me the numerical division. |
| Forelady: | Okay. On the first is 11 to 1; second, it was 10 to 2; voluntary, it was 10 to 2; and aggravated assault, of course, it was 12 to 0, since he confessed-- |
| Court: | Oh, you find him guilty of the agg-- |
| Forelady: | Yes. |

Court:          Okay. All right. All right. Well, this--this happens. We appreciate your service and your help and you're free to go. Thank you.

(The jury was excused by the Court and retired from open court, after which the further following proceedings were had:)

Court:          We can do that count on December the 15th, if you'll waive the 45-day ---

State:          Your Honor, we'd ask the Court not to accept an aggravated assault on a hung jury on the other counts, because I don't believe under the state of the law that both of them can be accepted, and we intend to retry Mr. Skelton.

Court:          All right. All right. Give me a trial date.

Thereafter, a date was set for a second trial. On February 15, 2000, Defendant filed a motion to dismiss the count of the presentment charging attempted first degree murder. He also moved for a judgment of acquittal on the grounds that a second trial would violate principles of double jeopardy and the results of the first trial did not provide proper grounds for declaring a mistrial. The trial court denied Defendant's motions. Defendant then filed a motion for interlocutory appeal pursuant to Tenn. R. App. P. 9. This motion was also denied.

On September 18, 2000, Defendant filed an application to this Court for extraordinary appeal pursuant to Tenn. R. App. P. 10. Our review of the record revealed the following: Defendant was charged with attempted first degree murder and aggravated assault based on one underlying offense; the trial court accepted the jury's verdict of guilt on the aggravated assault charge prior to dismissing the jury; the trial court never declared a mistrial; and, since Defendant stands convicted for aggravated assault, a retrial on the attempted first degree murder charge would result in a second prosecution for the same offense. In an order dated October 13, 2000, we granted Defendant's Rule 10 application, concluding that an immediate review by this court was "necessary to ensure that the defendant's constitutional protections against double jeopardy are safeguarded."

The State subsequently responded with a motion to dismiss Defendant's Rule 10 appeal on the ground that it was improvidently granted. The State pointed out that we granted Defendant's application based on findings which were inconsistent with the trial court's minutes dated November 8, 2000, which contain the following comments regarding the verdict in Defendant's case:

Upon their oaths the jurors say: that they can never agree upon a verdict as to the 1st Count and by consent a "MISTRIAL" is entered; further, the jury says that they find the defendant guilty of Aggravated Assault, as charged in the 2nd Count. However, upon the motion of the Attorney General, the Court does not accept the jury's verdict and this case is reset for trial on March 7, 2000.

-4-

The State argued that, according to the above minute entry, the trial court did not accept the jury's verdict and, by consent, it had also declared a "mistrial" which permitted the State to retry Defendant. This Court agreed that Defendant's application to appeal was granted on the premise that the trial court had accepted the jury's verdict as to aggravated assault and dismissed the jury without declaring a "mistrial." Because the trial court minutes called this premise into question by contradicting the verbatim transcript, we concluded that the Rule 10 appeal should further embrace the issues of (1) whether the transcript or the minute entry controls in circumstances such as these, and (2) the scope and effect thereof. On February 28, 2001, Defendant and the State were ordered to supplement their briefs accordingly.

Therefore, the instant appeal presents the following issues: (1) whether the verbatim transcript of the trial court proceedings or the minute entry filed by the court controls in the event there is a conflict between the two documents; and (2) whether a jury verdict of guilty concerning the offense of aggravated assault precludes a second trial on the attempted first degree murder count based on double jeopardy principles under the circumstances presented here. After a review of the record and applicable law, we find (1) that the transcript controls in cases where a conflict exists between the verbatim transcript and the trial court's minutes and (2) that a second prosecution of Defendant for attempted first degree murder is prohibited by principles of double jeopardy. We therefore dismiss with prejudice the count charging attempted first degree murder and remand this matter to the trial court for sentencing on his conviction of aggravated assault.

**Analysis**

**I. Discrepancies in the Record**

We first address the issue whether the transcript or the minute entry controls the questions presented in this appeal. Defendant contends that a verbatim transcript controls when a discrepancy arises between the facts as presented by the transcript of the trial court's proceedings and those provided by the minute entry filed by the trial court. The State agrees with Defendant that the verbatim transcript controls, citing our decisions in State v. Moore, 814 S.W.2d 381 (Tenn. Crim. App. 1991), and State v. Zyla, 628 S.W.2d 39 (Tenn. Crim. App. 1981), to support its contention.

The transcript controls the questions presented on appeal. As noted by the State, this Court has previously held that, "when there is a conflict between the court minutes and the transcript of the proceeding, the transcript controls." Moore, 814 S.W.2d at 383 (citing State v. Zyla, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981); see Farmer v. State, 574 S.W.2d 49, 50 (Tenn. Crim. App. 1978).

**II. Double Jeopardy**

Defendant contends that subjecting him to a second trial for attempted first degree murder, *after the jury found him guilty of aggravated assault*, would constitute a second prosecution for the same offense, thereby violating state and federal constitutional safeguards against double jeopardy. The State concedes that aggravated assault and attempted first degree murder are the "same" offense

for purposes of double jeopardy analysis and that, *because Defendant was convicted of aggravated assault*, a retrial on the indictment for attempted first degree murder is prohibited.

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . .". Article 1, sec. 10 of the Tennessee Constitution contains a similar provision. As our supreme court has noted many times, the three fundamental principles underlying double jeopardy provide protections against (1) a second prosecution after an acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996).

While we agree that a second prosecution for attempted first degree murder would violate constitutional prohibitions against double jeopardy, the rationale for our conclusion varies from that used by the State and Defendant, because both arguments rely on Defendant's aggravated assault conviction. This reliance is misplaced. Defendant's conviction for aggravated assault has nothing to do with proper resolution of the case sub judice. Instead, this case requires us to address, in essence, the first fundamental principle underlying double jeopardy; specifically, whether it would be proper to subject Defendant to a second prosecution after an acquittal.

Thus, the proper issue is whether it is permissible to subject Defendant to a second prosecution of attempted first degree murder after termination of the trial in this case. Granted, the jury did not find Defendant "not guilty." However, the termination of trial proceedings, without a finding that a manifest necessity existed to do so, and without the defendant's request or consent, was improper, and we find it operates as an "acquittal" for purposes of double jeopardy analysis in this case for the reasons stated herein. See Jones v. State, 403 S.W.2d 750, 754 (Tenn. 1966) ("the rule can be stated in Tennessee that once a jury has been sworn to try the issues, a juror, or jurors, or the whole panel, cannot be discharged and a mistrial declared without discharging the defendant, except in cases of manifest necessity"); Mahala v. State, 18 Tenn. 532 (Tenn. 1837) (where discharge of jury was an improper exercise of the power of the court, the judgment must be reversed and defendant discharged); State v. Waterhouse, 8 Tenn. 278 (Tenn. 1827) (where discretion of the judge in discharging the jury was improperly exercised, discharge of the jury was tantamount to an acquittal).

A brief review of the relevant facts is appropriate: after some deliberation at the conclusion of trial, the jury returned to the courtroom and the trial judge asked the jury foreperson whether the jury had reached a verdict and the foreperson responded, "no." The trial judge then inquired as to the numerical division of the vote. The foreperson reported the division and that the jury had found Defendant guilty of aggravated assault, "since he confessed." At this point, the trial judge dismissed the jury. After the jury had retired from open court, the trial judge appeared to question the parties regarding an appropriate date for sentencing on the aggravated assault conviction. The State responded by requesting that the trial court not accept the verdict because it intended to retry Defendant, and the trial judge set a second trial date. Since we have concluded that the facts given in the verbatim transcript control, we note that the premise upon which we granted Defendant's

application to appeal is not in dispute; to wit, that the trial court had accepted the jury's verdict of guilt as to the charge of aggravated assault and dismissed the jury without declaring a mistrial as to the count charging attempted first degree murder.

The trial court's first error occurred when the trial judge directed the foreperson to "tell me the numerical division," and the foreperson responded, "Okay. On the first is 11 to 1; second, it was 10 to 2; voluntary, it was 10 to 2; and aggravated assault, of course, it was 12 to 0, since he confessed." This was an improper request on the part of the trial court. Where a jury is unable to reach a verdict, our supreme court has held that the trial judge must follow the procedure set forth in Kersey v. State, 525 S.W.2d 139 (Tenn. 1975). Specifically, when a jury reports its inability to come to a unanimous decision, Kersey directs the trial judge to "admonish the jury, at the very outset, *not to disclose their division* or whether they have entertained a prevailing view." Id. at 141 (emphasis added). Kersey is quite explicit on this point. In fact, "[t]he *only* permissive inquiry [a trial judge may make] is as to progress and the jury may be asked whether it believes it might reach a verdict after further deliberations." Id. (emphasis added). Thereafter, a trial judge may give supplemental instructions in accordance with specific guidelines provided in Kersey if the court feels that further deliberations might be productive. See id. We emphasize that *until the jury reaches a verdict*, "no one--not even the trial judge--has any right, reason or power to question the specifics of its deliberative efforts. . . . [S]uch inquiry is error." Id. (citing Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926)).

The trial court also erred by failing to adhere to established legal procedures concerning the declaration of a mistrial. These procedures are important, for exceptions to the prohibition against double jeopardy permit a retrial of a defendant where a "manifest necessity" exists for the mistrial. State v. Mounce, 859 S.W.2d 319, 321-22 (Tenn. 1993). Great caution must be exercised when declaring a mistrial based on manifest necessity because, "where the ruling is mistaken or abused, the defendant may not be reprosecuted." David Louis Raybin, Tennessee Practice, § 16.114 (1984) (citing State v. Waterhouse, 8 Tenn. 278 (1827)); see State v. Smith, 810 S.W.2d 155, 158 (Tenn. Crim. App. 1991) (where problems arising during trial were matters which could have been resolved at the original trial, necessity for a mistrial did not exist; defendant's convictions subsequent to retrial were therefore reversed and the charges dismissed).

One example of "manifest necessity" long recognized as a sufficient reason for declaring a mistrial is the inability of a jury to reach a unanimous verdict. Mounce, 859 S.W.2d at 322 ; State v. Witt, 572 S.W.2d 913, 915 (Tenn. 1978); State v. Freeman, 669 S.W.2d 688 (Tenn. Crim. App. 1983). Since unanimity is required, when a jury returns with a vote which is split, the trial court has the power and the duty to return the jury to the jury room with instructions that their verdict must be unanimous. Gwinn v. State, 595 S.W.2d 832, 835 (Tenn. Crim. App. 1979). A permissible alternative is to question the jury as to whether it believes a verdict might be possible after further deliberations. Mounce, 859 S.W.2d at 322; see Kersey, 525 S.W.2d at 141. For "[i]t is only when there is no feasible and just alternative to halting the proceedings that a manifest necessity is shown." Mounce, 859 S.W.2d at 322 (citing State v. Knight, 616 S.W.2d 593, 596 (Tenn. 1981)); see State

v. Smith, 810 S.W.2d 155 (Tenn. Crim. App. 1991) (where mistrial erroneously granted based on issues which could have been resolved during the first trial, retrial should have been prohibited).

Upon hearing that the jury's vote was split on the issue of guilt for the charge of attempted first degree murder, the trial court in the case sub judice summarily dismissed the jury without making any inquiries as to whether a valid verdict might be obtained or if the jury was hopelessly deadlocked. Under Mounce, where a trial judge declines to exercise the preferred alternative of instructing the jury further and/or request that it continue to deliberate for the purpose of returning a consistent verdict, a finding of manifest necessity to summarily conclude the trial is precluded. See Mounce, 859 S.W.2d at 322. Because manifest necessity was not proven in the case sub judice, declaring a mistrial would not have been proper. Even if a mistrial was *intended*, it would not provide an exception to double jeopardy because the record fails to show that manifest necessity existed and a "mistrial" was never actually declared. See Mounce, 859 S.W.2d at 321-22; Knight, 616 S.W.2d at 596; Waterhouse, 8 Tenn. 278; Smith, 810 S.W.2d at 157.

Lastly, we note that a defendant should be mindful of his duty to object whenever the trial court declares a mistrial or the state indicates an intention to retry him without his consent. An objection in the record may be crucial because a retrial is not barred by double jeopardy where a defendant consents to the termination of the trial, notwithstanding the lack of a manifest necessity for doing so. Mounce, 859 S.W.2d at 322 (citing Knight, 616 S.W.2d at 596). In Tennessee, a defendant who stands silent at a time when he could have objected to the action taken by the trial court may often be considered to have acquiesced in that particular course of action. Id. at 322-23. This rule prohibits a party from standing silent while the trial court commits an error in procedure, and then rely on that error to his or her own advantage at a later time. Id. It follows that "if an accused fails to object to the jury's discharge upon a defective verdict, he is viewed as having waived the right not to be put on trial again." Id. (citations omitted).

In State v. Mounce, 859 S.W.2d 319 (Tenn. 1993), our supreme court considered an issue similar to the case at bar--whether a defendant's failure to object when the trial court declared a mistrial should result in a default of his constitutional right against double jeopardy--and held that "when a defendant *chooses* not to object to the mistrial and give the trial court an opportunity to correct the error, consent may be inferred and, therefore, double jeopardy will not bar a subsequent prosecution." Id. (emphasis added). Although it was undisputed that the defendant in Mounce failed to object, the supreme court ultimately dismissed the defendant's prosecution. The supreme court concluded that a defendant must have a realistic opportunity to object, prior to a trial court's sua sponte declaration of a mistrial. Id. Since the appellate record in Mounce could not provide an answer to this question, the court declined to indulge in the assumption that the defendant had such an opportunity and failed to take advantage of it.

Contrary to the circumstances in Mounce (where the record was unclear whether the defendant ever had an *opportunity* to object), the record in the instant case indicates that Defendant had virtually nothing to object to. Upon receiving notice that the jury's vote was split, the trial judge thanked the jurors for their service, told them they were free to leave, and the jury then left the

courtroom. Once a jury is discharged and physically separated from the courtroom, it may not be reconvened for the taking of any action whatever involving the fate of the accused. State v. Green, 995 S.W.2d 591, 612 (Tenn. Crim. App. 1998) (citing Clark v. State, 170 Tenn. 494, 97 S.W.2d 644 (1936)). As previously observed, the word "mistrial" is found nowhere in the transcript. It is apparent that the trial court considered the trial terminated with a conviction for aggravated assault. (Further, it can be readily inferred that Defendant felt the same; the State did nothing to contradict this assumption until *after* the jury had been discharged.) We hold that Defendant's failure to object does not interfere with his constitutional rights against double jeopardy under circumstances such as these. Because the facts in the record do not show that Defendant had an opportunity to object prior to the trial court's sua sponte order terminating the proceedings, we cannot find that he waived his double jeopardy protections.

Here, we find that (1) the trial judge improperly terminated Defendant's trial proceedings without any attempt to obtain a valid verdict on the charge of attempted first degree murder or inquire into the likelihood of obtaining same; (2) the record is devoid of any indication that a manifest necessity existed; (3) the State failed in its duty to demonstrate that a mistrial would be justified, or that any other circumstances provided proper grounds for a second trial; (4) the transcript reveals that no "mistrial" was ever declared; and (5), under Mounce, Defendant cannot be held responsible for failing to object where, since no mistrial was declared and the jury was summarily dismissed without discussion, he was without opportunity to object. Based on these findings, we conclude that the trial court's dismissal of the jury and termination of the trial act as an acquittal of Defendant on the charges of attempted first degree murder for purposes of double jeopardy analysis. See Jones v. State, 403 S.W.2d 750, 754 (Tenn. 1966) ("once a jury has been sworn to try the issues, a juror, or jurors, or the whole panel, cannot be discharged and a mistrial declared without discharging the defendant, except in cases of manifest necessity"); Mahala, 18 Tenn. 532 (improper or illegal discharge of the jury generally operates as an acquittal); Waterhouse, 8 Tenn. 278 (where discretion of the judge in discharging the jury was improperly exercised, discharge of the jury was tantamount to an acquittal). Accordingly, a second prosecution of Defendant on this charge is barred by our state and federal constitutions. See State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996).

**Conclusion**

Under the circumstances presented in this case, subjecting Defendant to a second trial for attempted first degree murder would violate constitutional guarantees against double jeopardy and is, therefore, prohibited. The count charging attempted first degree murder is dismissed, and this case is remanded to the trial court for sentencing of Defendant on his conviction for aggravated assault.

THOMAS T. WOODALL, JUDGE

-9-