**STATE of Tennessee**

v.

**Rocky Joe HOUSTON.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Nov. 24, 2009 Session.

March 3, 2010.

No Application for Permission
to Appeal Filed.

Randy G. Rogers, Athens, Tennessee, for the appellant, Rocky Joe Houston.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; G. Robert Radford, District Attorney General Pro Tempore; Kenneth Irvine, District Attorney General Pro Tempore; and Jason Demastus, Assistant District Attorney General Pro Tempore, for the appellee, State of Tennessee.

## OPINION

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA McGEE OGLE, J., and D. MICHAEL SWINEY., Sp. J., joined.

The issue presented in this interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure is whether the manner of discharge of the jury prior to the jury's reaching a verdict on all counts and the jury's unorthodox consideration of the charged and lesser included offenses prohibit a retrial of the defendant, Rocky Joe Houston, on the charged offenses under the state and federal constitutional protections against double jeopardy. Because the record establishes that the jury reached a verdict of not guilty on the charge of the first degree premeditated murder of Gerald Michael Brown and several lesser included offenses before it was discharged, the defendant stands acquitted of those charges, and his retrial on those offenses is barred by the state and federal constitutions. Regarding the remainder of the charges, the record establishes that the trial court improperly dismissed the jury without declaring a mistrial, without the defendant's consent, and without finding a manifest necessity to terminate the proceedings. Because the improper discharge of the jury operates as an acquittal, the principles of double jeopardy bar the defendant's retrial for any offense in the indictment. Therefore, the judgment of the trial court permitting retrial of the defendant is reversed, and the charges are dismissed.

On October 15, 2007, the Roane County grand jury returned a three-count indictment charging the defendant, Rocky Joe Houston, and his brother, Clifford Leon Houston, with the May 11, 2006 first degree premeditated murder of William Birl Jones, the first degree premeditated murder of Gerald Michael Brown, and the first degree felony murder of Gerald Michael Brown perpetrated during the first degree premeditated murder of William Birl Jones. Following the designation of a district attorney general pro tempore and a special judge to hear the case,[1] the defen-

---

1. Both the Roane County District Attorney General and the circuit court judge recused themselves from the case. Attorney G. Robert Radford was originally designated as district attorney general pro tempore and presided over the case during the defendants' joint indictment. Knox County Assistant District Attorney General Ken Irvine was later appointed to replace Mr. Radford, and General Irvine prosecuted the defendant at trial.

dant's separate trial commenced in December 2008.[2]

On December 19, 2008, the jury sent a note to the trial judge indicating that it had been unable to reach a unanimous verdict. Upon the jury's return to the court room, the jury foreman reported, "[W]e as a jury panel have ... not been able to reach a unanimous verdict."[3] The following exchange then occurred:

THE COURT: All right, you can be seated.

Is what you are reporting to me that you haven't been able to reach a unanimous verdict on any of the charges submitted to you for consideration?

FOREMAN: That's correct, sir.

THE COURT: Am I correct in interpreting what you are saying to me as to count one; let me read you this.

First degree, premeditated murder of William B[i]rl Jones, you could not unanimously agree as to that charge; is that what you are saying to me, Mr. Foreman?

FOREMAN: That is correct, sir.

THE COURT: If that is the verdict of each of you please signify by raising your right hand.

Let the record note that all 12 jurors have raised their right hand.

Do you wish to poll the jury as to this count one?

ATTORNEY ROGERS: Yes, Your Honor.

THE COURT: All right, proceed.

ATTORNEY ROGERS: Sir, is it your verdict or your position that the jury has not reached a verdict on that one aspect of count one of the indictment on whether or not it is first degree murder?

FOREMAN: Yes, sir. We've not reached a verdict.

ATTORNEY ROGERS: Has there been a ... vote taken on any of the defenses down that list under count one?

FOREMAN: Every one of them.

ATTORNEY ROGERS: And there is no unanimous verdict on any of those offenses?

FOREMAN: None.

Thereafter, Mr. Rogers, the defendant's counsel, inquired of each juror whether he or she agreed that the jury had been unable to reach a verdict on any of the charged offenses or any lesser included offenses of count one. Each agreed. Similar colloquies regarding the remaining two counts established that the jury had been unable to reach a unanimous verdict on the charged offenses or the lesser included offenses.

At that point, the following exchange occurred:

THE COURT: ....

Now my interpretations of what you are telling me Mr. Foreman, is that you

---

Anderson County Circuit Court Judge James B. Scott presided over this case from arraignment to trial. Following his ruling in several post-trial motions, including the grant of the interlocutory appeal currently before us, Judge Scott recused himself, and our supreme court designated Judge David G. Hayes, retired from the Court of Criminal Appeals, to preside over the case.

**2.** The first trial of Clifford Leon Houston ended in a mistrial.

**3.** Two transcripts of the December 19, 2008 proceedings are included in the record on appeal. The transcripts are virtually identical and both bear the signature of the trial judge and the court reporter. One transcript bears a filing date of January 13, 2009, and one bears a filing date of January 31, 2009. We will treat the later-in-time transcript as an amended transcript, and all quoted material in this opinion comes from the January 31, 2009 version of the transcript.

have not considered the lesser crimes because you couldn't reach a verdict to the greater crime; is that right?

FOREMAN: Well, that's not completely right sir. We did go down the list and try to consider some of the secondary crimes. There were a couple that we were able to vote unanimously on. I have that on my note that there were only a couple.

THE COURT: Well, that's the reason for the polling and we need to take that up. And ... do you have that marked on your verdict form, sir?

FOREMAN: I do not, sir.

THE COURT: I see.

FOREMAN: I have it marked on a note where we made a chart of sorts to go down the list and to vote on each item and each count.

THE COURT: I see.

I'm going to send the jury back.

And make that out on the form and make sure that you have a unanimous verdict as to the ones upon which you can agree.

Okay, sir?

FOREMAN: Yes, sir.

THE COURT: I'm going to send the jury back for further deliberation.

Before the jury returned to render its verdict, General Irvine noted the State's objection to the procedure the trial court intended to employ. Citing Tennessee Rule of Criminal Procedure 31, he stated that it was "the State's position that the [c]ourt's inquiry should be at the highest level have them reach an agreement. If they have not, then that is as far as the [c]ourt goes." General Irvine warned the court of the "legal complications" that he believed would arise should the court inquire about the lesser included offenses if the jury was deadlocked on the greater offense. Attorney Rogers countered that

the defendant was "entitled to any verdict that this jury has reached which Your Honor can determine is unanimous." He went on,

And I think Your Honor has now impressed upon them ... tell us what you can reach a unanimous verdict on so that Your Honor can make a Rule 31 determination whether or not this jury has now reached a verdict that we are entitled to have. And all we want is what we are entitled to have under Rule 31.

The judge observed that the purpose of Rule 31 was to provide "an orderly process" for finding out "what [the jury] is trying to tell us" and stated that he sent the jury back with the verdict form in hopes that the form "would be more in keeping in the orderly process as it relates to Rule 31." The court stated, "I thought that they didn't go further as it relates to those other crimes because I thought they had found that they could not reach a verdict as to count one, two, and three." Finally, the court added, "I have to find out what this jury has done. We have quite a time invested in this and I'm going to find out."

The jury then returned to the court room, and the following exchange took place:

THE COURT: All right, sir, would you announce that by telling us what your form contains?

FOREMAN: My form does contain a few items that we ... were able to reach a unanimous not guilty verdict and in view of not knowing exactly—

THE COURT: Well, let me see the form if you don't mind.

Thereafter, the trial court held a bench conference during which it showed the verdict form to the attorneys. The State noted that it "continue[d] to object to the procedure employ[ed]." Mr. Rogers ob-

served that the jury had apparently misunderstood the court's instructions and that "they thought that they had to have a requirement of a unanimous verdict they thought that was across the board unanimous." Acknowledging the irregularities in the verdict as reported, Mr. Rogers stated his belief that the defendant was "entitled" to the verdict. The court then polled the jury regarding the verdict forms, and each juror agreed that the verdict was his or her own.

The jury reached the following verdicts:

| COUNT | CHARGE | VERDICT |
| --- | --- | --- |
| 1 | Premeditated first degree murder of William Birl Jones | Unable to reach a verdict |
| 1 | Second degree murder | Unable to reach a verdict |
| 1 | Facilitation of first degree premeditated murder | Unable to reach a verdict |
| 1 | Facilitation of second degree murder | Unable to reach a verdict |
| 1 | Voluntary Manslaughter | Unable to reach a verdict |
| 1 | Facilitation of voluntary manslaughter | Not guilty |
| 1 | Reckless homicide | Unable to reach a verdict |
| 1 | Criminally negligent homicide | Unable to reach a verdict |
| 2 | First degree premeditated murder of Gerald Michael Brown | Not guilty |
| 2 | Second degree murder | Unable to reach a verdict |
| 2 | Facilitation of first degree premeditated murder | Not guilty |
| 2 | Facilitation of second degree murder | Not guilty |
| 2 | Voluntary manslaughter | Unable to reach a verdict |
| 2 | Facilitation of voluntary manslaughter | Not guilty |
| 2 | Reckless homicide | Unable to reach a verdict |
| 2 | Criminally negligent homicide | Unable to reach a verdict |
| 3 | First degree felony murder of Gerald Michael Brown | Unable to reach a verdict |
| 3 | Second degree murder | Unable to reach a verdict |
| 3 | Facilitation of first degree felony murder | Not guilty |
| 3 | Facilitation of second degree murder | Not guilty |
| 3 | Voluntary manslaughter | Unable to reach a verdict |
| 3 | Facilitation of voluntary manslaughter | Not guilty |
| 3 | Reckless homicide | Unable to reach a verdict |
| 3 | Criminally negligent homicide | Unable to reach a verdict |

Following the court's polling of the jury, the court asked the parties if they wished to poll the jury further, and the defense declined while the State elected to "stand on its earlier objection." The court again asked the jury if it was "reporting officially that this is your jury verdict," and the jury again agreed. The court then immediately released the jury without further comment. After the jurors left the court room, the court inquired of the parties:

And as it relates to the jury verdict as the foreman read it, it is my understanding that there have been some findings of not guilty as to some of the charges that the defendant was in fact charged with as lesser included offenses. Now is that your understanding?

The court then stated, "Well, the [c]ourt finds that the defendant's bond is still the same amount and we will set this matter for some type of status hearing but I think you gentlemen need to get together so that the [c]ourt can address those matters."

Following this statement, the court adjourned without further comment.

In a January 16, 2009 "Motion to Limit Subsequent Retrial to Those Issues Not Previously Decided by the Verdict Returned by the Jury" the defendant entered a "plea of former jeopardy with regard to all Counts of the indictment which were decided by the reported verdict form and by operation of law." He argued that because the jury was instructed to move on to the lesser included offenses only after it found the defendant not guilty of the greater offense, the jury's verdict of not guilty on some of the lesser included offenses in this case operated as an acquittal of the greater charges. Using this analysis, the defendant argued that he could not be retried on "any offense greater than reckless homicide." The defendant asked the court to "enter the verdicts and order the new trial pursuant to the mistrial on the lesser included offenses[ ] be had but that he not be subjected to any potential jeopardy beyond those lesser included offenses charged to the jury but unresolved by the verdict report form or its implications."

Five days later, the defendant filed a supplement to his motion "urg[ing] that he should be barred from further trial on the basis of former jeopardy because the jury ... was released from further deliberations without the [c]ourt declaring a mistrial." Citing State v. Skelton, 77 S.W.3d 791, 798–99 (Tenn.Crim.App.2001), the defendant argued that the trial court's failure to find a manifest necessity and declare a mistrial before releasing the jurors prevented his being retried on any offense.

At the January 21, 2009 status hearing, the defendant reasserted his claim that principles of double jeopardy prevented a retrial. The defendant noted his approval of the procedure used to poll the jury and the trial court's decision to send the jury back for further deliberation, but he argued that the court had reached the wrong conclusion with regard to what the jury meant by the irregular verdict forms. He asserted, as he had in his motion, that the jury's rendering verdicts on some of the lesser included offenses had necessarily operated as an acquittal of even those greater offenses upon which the jury was unable to reach a verdict. He also stated that should the court find that it had committed error in its inquiry pursuant to Rule 31, then the court had erroneously dismissed the jury without declaring a mistrial.

The State countered that it should be permitted to retry the defendant on the three charges of first degree murder contained in the indictment because the court had, in fact, erred in its Rule 31 inquiry. The State asserted that the court should have ended its inquiry when it learned that the jury had deadlocked on the greatest charge in each count. Thus, the State contended, everything that followed the jury's initial statement that it was unable to reach a verdict "was a nullity."

At the conclusion of the hearing, the trial court ruled that it would allow the State time to file a written response to the defendant's motions. In addition, the court stated that it wanted time to consider the defendant's request for a reduction of his bond. The court noted that "the implications of jeopardy that may be as a result of the verdict that we have received in this case" could impact the bond issue and set a hearing for the bond reduction motion.

By written order filed on January 31, 2009, the trial court granted the defendant's motion in part and denied it in part. First, the trial court concluded that it had appropriately inquired into the jury's decision regarding the lesser included offenses despite the jury's state-

ment that it had been unable to reach an agreement on the charged offense in each count because "the spontaneous inaudible discussion among jurors" led the court to believe "that it had not yet adequately determined" under Rule 31 the level of offense upon which the jury had disagreed. Observing that the jury foreman's statement that the jury had reached some agreement on the lesser included offenses was "unsolicited," the court determined that it had properly sent the jury back for "further deliberations." The court also noted that although the State objected to the procedure employed by the trial court, the defendant specifically approved the procedure, and neither party requested a mistrial. The court observed that the verdict form "demonstrated [the jury's] failure to adhere to the 'acquittal-first' instructions, except as to the charged offense in Count 2," and it ruled that "[a]s a result, the only verdict returned by the jury in this case that the [c]ourt could legally accept was the jury's determination that the [d]efendant was not guilty of the charged offense in Count 2." The court further held that "[e]very other verdict returned by the jury on its written verdict forms, and as orally announced by them upon polling, was nullity as they did not conform to applicable law." Noting that it had probably not

followed the correct procedures "either for having the jurors correct the void portions of their verdict before their discharge or for establishing the mistrial based on the jury's inability to reach verdicts," the court nevertheless concluded that it was "unnecessary" for the court "to engage in a meticulous analysis of its actions following the return of the jury's partially void verdict because all parties acquiesced to the [c]ourt's dismissal of the jurors and termination of the proceedings."

The court admitted that it had dismissed the jurors without "a finding of manifest necessity supporting the grant of a mistrial" or actually declaring a mistrial, but it ruled that the defendant was not entitled to relief because he had not objected to the dismissal of the jury.[4] The court concluded that when it offered to allow the attorneys to poll the jury, "defense counsel should have either asked the [c]ourt to direct the jury to engage in further deliberations to clear up its verdict, or asked the [c]ourt to inquire of the jurors whether their verdict meant that they were hopelessly deadlocked as to certain offenses." The court ruled that the defendant's "consent to the termination of the proceedings without a verdict ... can be inferred" from his failure to make these inquiries

---

4. The minutes of the trial court, which may have shed light on the trial court's intentions regarding the discharge of the jury on December 19, 2008, were not made a part of the record on appeal. In an effort to complete the most comprehensive review of the trial court proceedings, this court ordered that the record be supplemented with the minutes of the trial court, only to learn that no minutes had been prepared or signed for December 19, 2008. Tennessee Code Annotated section 16–1–106 provides that

[t]he minutes of the court for each day's work shall be signed by the judge. The minute book shall provide a place for the judge's signature after the minute entries

each day; however, where the orders of the court are photocopied so that an accurate facsimile of the entire order and judge's signature appears, it shall be sufficient for the judge to sign at the end of the minute book approving all the minutes in the book. T.C.A. § 16–1–106(a) (2006). Implicit in the statute is that minutes for each day's work be prepared and placed in a minute book. In addition, Code section 18–1–105 creates a duty in the trial court clerk to "[k]eep a well-bound book, in which shall be entered the minutes of each day's proceedings during the session of the court, in the order in which they are made." T.C.A. § 18–1–105(a)(5) (2006).

and concluded that "double jeopardy does not bar the [d]efendant's retrial on all of the remaining offenses."

On February 13, 2009, the trial court granted the defendant's application for permission to pursue an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The court concluded that the "interests of judicial economy and fairness" required granting the application. Subsequently, this court granted the Rule 9 application as well.

In this interlocutory appeal, the defendant asserts that because the trial court failed to make a finding of manifest necessity or grant a mistrial prior to dismissing the jury, double jeopardy bars his retrial on any charge. In the alternative, he argues that the verdicts actually reported by the jury prevent his retrial on any offense greater than reckless homicide in each count. The State concedes that the defendant may not be retried on any offense upon which the jury reached a unanimous not guilty verdict. The State argues, however, that the defendant may be retried for any remaining offense because he "assented to the trial court ending the prior trial proceedings." In the alternative, the State contends that the jury's inability to reach a unanimous verdict as to the charged offenses and the trial court's violation of Rule 31 "as well as present law on how a jury should be instructed to consider lesser included offenses" in this case constituted a manifest necessity to support the grant of a mistrial.

█ Although this court reviews the decision to grant or deny a mistrial for an abuse of the trial court's discretion, *see State v. Mounce*, 859 S.W.2d 319, 322 (Tenn.1993), the trial court conceded that it did not declare a mistrial or make a finding that its discharge of the jury was prompted by a manifest necessity. In consequence, the only remaining question, whether double jeopardy principles bar the defendant's retrial, is a question of law with constitutional implications and, as such, our review is de novo with no presumption of correctness afforded to the determinations of the trial court. *See State v. Davis*, 266 S.W.3d 896, 901 (Tenn. 2008) (citing *State v. Burns*, 205 S.W.3d 412, 414 (Tenn.2006)); *see also Arizona v. Washington*, 434 U.S. 497, 509 n. 28, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978) (noting that appellate court deference to the trial court "disappears" when the trial court fails to soundly exercise the discretion entrusted to it to declare a mistrial).

Both the federal and state constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offence." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The state and federal provisions, which are quite similar in verbiage, have been given identical interpretations. *See State v. Waterhouse*, 8 Tenn. (1 Mart. & Yer.) 278, 284 (1827) ("[W]e did not feel ourselves warranted in giving [the double jeopardy provision of the state constitution] a construction different from that given to the constitution of the United States, by the tribunal possessing the power, (and of pre-eminent qualifications) to fix the construction of that instrument."). The United States Supreme Court has observed of the double jeopardy clause:

> Our cases have recognized that the Clause embodies two vitally important interests. The first is the 'deeply ingrained' principle that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even

though innocent he may be found guilty.' The second interest is the preservation of 'the finality of judgments.'

*Yeager v. United States,* —— U.S. ——, 129 S.Ct. 2360, 2365–66, 174 L.Ed.2d 78 (2009) (citations omitted). To these ends, our state supreme court has "noted many times, three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." *State v. Denton,* 938 S.W.2d 373, 378 (Tenn.1996) (citing *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); *United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). At issue in this case is the first of the three principles of double jeopardy, protection against a second prosecution after a de jure acquittal.

The trial court deemed the jury's verdict forms in this case "a nullity" by virtue of its conclusion that the jury had failed to follow the jury instructions. The record, however, belies the trial court's finding that the jury failed to follow the instructions ultimately given by the court.

Although the trial court provided the jury with the "acquittal first" instruction during its initial charge, which requires that the jury unanimously acquit the defendant of the greater charge before considering the lesser included offenses, *see generally State v. Davis,* 266 S.W.3d 896, 910 (Tenn.2008) (concluding that "the trial court shall instruct the jury to consider the offenses in order from greatest to least within each count of the indictment and that it shall not proceed to consider any lesser-included offense until it has first made a unanimous determination that the defendant is not guilty of the immediately-preceding greater offense"), the trial court later modified that instruction after the jury indicated that it was unable to reach an agreement. The record establishes that after the jury indicated that it could not unanimously agree on the defendant's guilt of the greatest charge in each count, the trial court inquired whether the jury had yet considered the lesser included offenses and, when it learned that the jury had discussed the lesser included offenses, ordered the jury to return to the jury room not to deliberate but to memorialize its consideration of the lesser included offenses on the verdict form.

■ As General Irvine pointed out, the trial court should not have inquired whether the jury had considered any lesser included offenses after the jury indicated that it could not agree on the greatest charge in each count of the indictment. Tennessee Rule of Criminal Procedure 31 provides the procedure the trial court should follow when the jury indicates that it cannot agree:

If the court instructs the jury on one or more lesser included offenses and the jury reports that it cannot unanimously agree on a verdict, the court shall address the foreperson and inquire whether there is disagreement as to the charged offense and each lesser offense on which the jury was instructed. The following procedures apply:

(A) The court shall begin with the charged offense and, in descending order, inquire as to each lesser offense until the court determines at what level of the offense the jury has disagreed;

(B) The court shall then inquire if the jury has unanimously voted not guilty to the charged offense.

(i) If so, at the request of either party, the court shall poll the jury as to their verdict on the charged offense.

(ii) If it is determined that the jury found the defendant not guilty of the charged offense, the court shall enter a not guilty verdict for the charged offense.

(C) The court shall then inquire if the jury unanimously voted not guilty as to the next, lesser instructed offense.

(i) If so, at the request of either party the court shall poll the jury as to their verdict on this offense.

(ii) If it is determined that the jury found the defendant not guilty of the lesser offense, the court shall enter a not guilty verdict for that offense.

(D) The court shall continue this inquiry for each lesser instructed offense in descending order until the inquiry comes to the level of the offense on which the jury disagreed.

(E) The court may then declare a mistrial as to that lesser offense, or the court may direct the jury to deliberate further as to that lesser offense as well as any remaining offenses originally instructed to the jury.

Tenn. R.Crim. P. 31(d)(2). Here, the jury indicated that it disagreed on the charged offense in each count. Accordingly, the trial court should not have inquired about the jury's consideration of the lesser included offenses. Moreover, although the trial court insisted that the jury's revelation that it had considered the lesser included offenses was "unsolicited," the record establishes that the revelation came in response to the trial court's query. Rather than asking the jury whether it had considered the lesser included offenses, the trial court should have endeavored to determine whether the jury was, in fact, hopelessly deadlocked or whether it would benefit from further deliberation *as to the*

greatest charge. When the jury reports that it cannot reach a verdict, "[t]he only permissive inquiry is as to progress and the jury may be asked whether it believes it might reach a verdict after further deliberations." *Kersey v. State*, 525 S.W.2d 139, 141 (Tenn.1975). The trial court's actions modified its earlier "acquittal first" instruction and, in violation of Rule 31 and the ruling in *Davis*,[5] directed the jury to consider the lesser included offenses before reaching an agreement on the greatest offense under each count of the indictment. The trial court's instruction clearly invited the jury to return the unusual verdict forms in this case.

That being said, we cannot agree with the trial court's determination that the jury's actions demonstrate a failure to obey the instructions. Indeed, the jury did exactly as the trial court instructed them to do. In consequence, we cannot conclude that the jury's verdict was a legal nullity. Accordingly, we must consider the implications of the verdicts as rendered by the jury.

### *Jury Verdicts of Not Guilty*

■ The jury unanimously concluded that the defendant was not guilty of the following offenses: the facilitation of the voluntary manslaughter of William Birl Jones, the first degree premeditated murder of Gerald Michael Brown, the facilitation of the first degree premeditated murder of Gerald Michael Brown, the facilitation of the second degree murder of Gerald Michael Brown, the facilitation of the voluntary manslaughter of Gerald Michael Brown, the facilitation of the first degree felony murder of Gerald Michael Brown as a lesser included offense of felo-

---

**5.** To be fair, *Davis* was decided on October 17, 2008, only two months before the breach in this case.

ny murder, the facilitation of the second degree murder of Gerald Michael Brown as a lesser included offense of felony murder, and the facilitation of the voluntary manslaughter of Gerald Michael Brown as a lesser included offense of felony murder. The protection against double jeopardy in its oldest and simplest form prohibits the State from retrying the defendant on these charges, *see United States v. Ball*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896) ("However it may be in England, in this country a verdict of acquittal, although not followed by any judgment, is a bar to a subsequent prosecution for the same offence."), and the State concedes as much on appeal.

### Remaining Offenses

By its verdict forms, the jury indicated that it was unable to reach a verdict on the following offenses: the premeditated first degree murder of William Birl Jones, the second degree murder of William Birl Jones, the facilitation of the first degree premeditated murder of William Birl Jones, the facilitation of the second degree murder of William Birl Jones, the voluntary manslaughter of William Birl Jones, the reckless homicide of William Birl Jones, the criminally negligent homicide of William Birl Jones, the second degree murder of Gerald Michael Brown, the voluntary manslaughter of Gerald Michael Brown, the reckless homicide of Gerald Michael Brown, the criminally negligent homicide of Gerald Michael Brown, the first degree felony murder of Gerald Michael Brown, the second degree murder of Gerald Michael Brown as a lesser included offense of felony murder, the voluntary manslaughter of Gerald Michael Brown as a lesser included offense of felony murder, the reckless homicide of Gerald Michael Brown as a lesser included offense of felony murder, and the criminally negligent homicide of Gerald Michael Brown as a lesser included offense of felony murder. The State contends that the jury's inability to reach verdicts on these offenses created a manifest necessity for the grant of a mistrial. It claims that because grounds existed for the grant of a mistrial, the trial court did not err by dismissing the jury without actually declaring a mistrial. The defendant contends that because the trial court dismissed the jury without finding a manifest necessity or declaring a mistrial, double jeopardy principles preclude his being retried for these offenses. We agree with the defendant.

■ The "protection from multiple prosecutions" embodied in the double jeopardy clauses of both the state and federal constitutions "encompasses the defendant's 'right to have his trial completed before a particular tribunal.'" *State v. Nash*, 294 S.W.3d 541, 550 (Tenn.2009) (citing *Oregon v. Kennedy*, 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949)); *State v. Smith*, 871 S.W.2d 667, 671 (Tenn.1994)). The Supreme Court enumerated "[t]he reasons why this 'valued right' merits constitutional protection":

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

*Washington,* 434 U.S. at 503–05, 98 S.Ct. at 829–30 (footnotes omitted). Indeed,

> The jury in their deliberations upon the facts are as independent of the court, as the judge in determining the law is of the jury; and the consequence is, that when a case has been submitted to a jury, there it must remain until it has been decided by them, or is withdrawn from their consideration, not at the will and pleasure of the court, but under circumstances justified by the law.

*Mahala v. State,* 18 Tenn. (10 Yer.) 532, 535 (1837).

▬ As with many constitutional protections, however, exceptions exist to the defendant's right to have his case tried by the jury first empaneled. "What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837. When the defendant consents to the termination of proceedings, "the accused has deliberately elected to forego his right to have guilt or innocence determined by the first trier of fact." *Mounce,* 859 S.W.2d at 321 (quoting *State v. Knight,* 616 S.W.2d 593, 596 (Tenn.1981)); *see also United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978) ("[A] a motion [for mistrial] by the defendant is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact."); *State v. Huskey,* 66 S.W.3d 905, 916 (Tenn. Crim.App.2001) ("[D]ouble jeopardy does not bar a retrial when the defendant asks for a mistrial."). In addition, the defendant may be retried when the trial court finds a "manifest necessity" and declares a mistrial. *Mounce,* 859 S.W.2d at 321. "[W]here the declaration of a mistrial . . .

aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 1073–74, 35 L.Ed.2d 425 (1973) (citations omitted).

Historically, the failure of the jury to reach a unanimous verdict operated as an acquittal, protecting the defendant from retrial. *See generally Waterhouse,* 8 Tenn. (1 Mart. & Yer.) at 280, 283 ("The principle, that the defendant could not be put upon his trial a second time, after the first jury had been discharged upon disagreement, had generally, not to say uniformly, obtained in the circuit courts in capital cases in this state, so far as they came within my knowledge. . . . [T]he English common law, and the constitutions of the United States and our own state, were on the side of the construction adopted by the circuit courts; such was also, the opinion of [J]udge Haywood, whose experience and learning upon the subject was great, and entitled to very high respect."). The rule later developed, in both this country and England, that under certain circumstances the defendant could be retried even when the trial court terminated the proceedings without his consent. *Id.* As the Supreme Court explained,

> The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is im-

possible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, [c]ourts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner.

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824). "The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country." *Washington*, 434 U.S. at 509, 98 S.Ct. at 832 (footnote omitted).

 Our state supreme court adopted the reasoning of *Perez* but concluded that "[t]he acquittal, however, according to the most modern authorities, ... include[s] the case of an illegal discharge of the jury—in which case the defendant is virtually acquitted, and is entitled to be also discharged." *Waterhouse*, 8 Tenn. (1 Mart. & Yer.) at 280. The *Waterhouse* court ruled that where the trial court improperly exercises its discretion in the discharge of the jury, "such discharge [i]s tantamount to an acquittal, and ... under such circumstances, a defendant should be discharged." *Id.* at 281–282. Although the inability of the jury to reach a verdict has historically operated as proper grounds for the declaration of a mistrial and discharge of the jury, *see Washington*, 434 U.S. at 509, 98 S.Ct. at 832 (describing a deadlocked jury as "the classic basis for a proper mistrial"), the trial court must proceed with caution once the jury reports that it cannot agree. The Supreme Court described the competing interests in the face of such a report:

On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if [the trial judge] fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.

*Id.* "[T]he power to discharge a jury, without a verdict, is not the exercise of an arbitrary discretion, but an extremely delicate duty, only to be performed in cases of urgent necessity." *Mahala*, 18 Tenn. (10 Yer.) at 537. Most importantly, the judge must make sure that the jury's report actually reflects a hopeless deadlock. *See Kersey*, 525 S.W.2d at 145; *see also Mounce*, 859 S.W.2d at 322. When the jury indicates that it cannot unanimously agree on a verdict, "the trial court has the power and the duty to return the jury to the jury room with instructions that their verdict must be unanimous." *State v. Skelton*, 77 S.W.3d 791, 799 (Tenn.Crim. App.2001). The trial court may also "question the jury as to whether it believes a verdict might be possible after further deliberations." *Id.* "[O]nly when there is no feasible and just alternative to halting the proceedings"—a manifest necessity for a mistrial—may the trial court declare a mistrial on the basis of the jury's failure to reach a verdict. *Mounce*, 859 S.W.2d at 322.

Here, after the jury's initial report that it could not reach a unanimous agreement, the trial court did not inquire whether the jury's deadlock was hopeless or whether the jury would benefit from further deliberations. The record does not indicate how long the jury deliberated prior to its initial report. The trial court ascertained

simply that the jury had not yet reached an agreement on the greatest charge in each count and sent the jury back to render on the verdict forms the progress of its initial deliberations. Following the return of those forms, which clearly indicated jury confusion, the trial court summarily dismissed the jury without determining whether "instructions could be clarified and a valid verdict obtained, or whether the jury was hung." *See id.* The record is clear that the trial court did not actually declare a mistrial and, in the absence of the prescribed inquiries, we cannot say that a manifest necessity existed for the declaration of a mistrial. *See Skelton,* 77 S.W.3d at 799; *see also Mounce,* 859 S.W.2d at 322 ("Thus, the fact that the trial judge had available the preferred alternative of instructing the jury further and having them continue to deliberate for the purpose of returning a consistent verdict precludes the finding of a manifest necessity to summarily conclude the trial."). Because the trial court failed to establish that a manifest necessity existed, the trial court erred by discharging the jury in this case.

■■■■■ In its order, the trial court concluded that the defendant's failure to object to the discharge of the jury prevented the defendant from claiming error in the trial court's failure to find a manifest necessity and declare a mistrial before dismissing the jury. Indeed, "a defendant who stands silent at a time when he could have objected to the action taken by the trial court may often be considered to have acquiesced in that particular course of action," *Skelton,* 77 S.W.3d at 799 (citing *Mounce,* 859 S.W.2d at 322–23), and, "when a defendant chooses not to object to the mistrial and give the trial court an opportunity to correct the error, consent may be inferred and, therefore, double jeopardy will not bar a subsequent prose-

cution," *Mounce,* 859 S.W.2d at 323. Before consent will be inferred from the defendant's silence, however, the "defendant must have a realistic opportunity to object, prior to a trial court's sua sponte declaration of a mistrial." *Skelton,* 77 S.W.3d at 800 (citing *Mounce,* 859 S.W.2d at 323). In *Mounce,* the record did not establish whether Mounce had an opportunity to object, and, in consequence, the court refused to "indulge in the assumption that he had such an opportunity and failed to take advantage of it." *Mounce,* 859 S.W.2d at 323. In *Skelton,* this court refused to infer consent from Skelton's silence because the record established that Skelton "had virtually nothing to object to" because the trial court dismissed the jury without actually declaring a mistrial. *Skelton,* 77 S.W.3d at 800. Clearly, where there has been no actual declaration of a mistrial, the defendant will not be held responsible for his failure to object to the termination of the proceedings. The trial court's intent must be abundantly clear before we will infer from the defendant's silence his consent to a termination of the proceedings.

Here, as in *Skelton,* the trial court discharged the jury without determining whether the jury was hopelessly deadlocked, without finding that termination of the trial was manifestly necessary, and without actually declaring a mistrial. The record establishes that rather than attempting to clarify the unorthodox jury verdicts rendered in this case, the trial court polled the jury, accepted the verdicts as rendered, and dismissed the jury. Although the trial court provided the parties with an opportunity to poll the jury regarding the verdict forms, it gave no indication that it intended to declare a mistrial or that it planned to immediately dismiss the jury. Indeed, as in *Skelton,* the words "mistrial" or "manifest necessity" do not appear in the transcript. The immediate and unexpected discharge of the jury left

the defendant in this case without a realistic opportunity to object. In consequence, we refuse to infer the defendant's consent from his silence.

■ The trial court in this case dismissed the jury without attempting to clarify the unorthodox verdict forms in this case, without concluding whether further deliberation might result in a valid verdict on each count, without finding that a manifest necessity existed to terminate the proceedings, and without actually declaring a mistrial. The trial court's failure to take these necessary steps leaves the record completely devoid of sufficient grounds to support the dismissal of the jury in this case. Moreover, because the record establishes that the defendant did not have a reasonable opportunity to object to the dismissal of the jury, we will not infer his consent to do so. Under these circumstances, the dismissal of the jury was improper and operates as an acquittal. *See Skelton*, 77 S.W.3d at 800–01; *Mounce*, 859 S.W.2d at 323; *Mahala*, 18 Tenn. (10 Yer.) at 537; *Waterhouse*, 8 Tenn. (1 Mart. & Yer.) at 280, 281–82. In consequence, principles of double jeopardy bar the defendant's retrial for those offenses on which the jury initially indicated that it could not reach an agreement.

### Conclusion

Because the jury concluded that defendant was not guilty of the facilitation of the voluntary manslaughter of William Birl Jones, the first degree premeditated murder of Gerald Michael Brown, the facilitation of the first degree premeditated murder of Gerald Michael Brown, the facilitation of the second degree murder of Gerald Michael Brown, the facilitation of the voluntary manslaughter of Gerald Michael Brown, the facilitation of the first degree felony murder of Gerald Michael Brown as a lesser included offense of felony murder, the facilitation of the second degree murder of Gerald Michael Brown as a lesser included offense of felony murder, and the facilitation of the voluntary manslaughter of Gerald Michael Brown as a lesser included offense of felony murder, principles of double jeopardy bar his retrial on these offenses. Further, because the trial court's improper discharge of the jury operates as an acquittal as to the premeditated first degree murder of William Birl Jones, the second degree murder of William Birl Jones, the facilitation of the first degree premeditated murder of William Birl Jones, the facilitation of the second degree murder of William Birl Jones, the voluntary manslaughter of William Birl Jones, the reckless homicide of William Birl Jones, the criminally negligent homicide of William Birl Jones, the second degree murder of Gerald Michael Brown, the voluntary manslaughter of Gerald Michael Brown, the reckless homicide of Gerald Michael Brown, the criminally negligent homicide of Gerald Michael Brown, the first degree felony murder of Gerald Michael Brown, the second degree murder of Gerald Michael Brown as a lesser included offense of felony murder, the voluntary manslaughter of Gerald Michael Brown as a lesser included offense of felony murder, the reckless homicide of Gerald Michael Brown as a lesser included offense of felony murder, and the criminally negligent homicide of Gerald Michael Brown as a lesser included offense of felony murder, the defendant may not be retried on those offenses. In sum, both our state and federal constitutional guarantees against double jeopardy prohibit a second prosecution of the defendant for any offense contained in the indictment in this case. Accordingly, the judgment of the trial court allowing the defendant's retrial is reversed, and the case is dismissed.