# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 25, 2014 Session

## STATE OF TENNESSEE v. RONALD LEE WEST, JR.

**Appeal from the Criminal Court for Greene County**
**No. 12-CR-138      John F. Dugger, Jr., Judge**

**No. E2013-00830-CCA-R3-CD -Filed May 13, 2014**

The Defendant, Ronald Lee West, Jr., appeals from his jury convictions for initiation of a process intended to result in the manufacture of methamphetamine, Count 1, and possession of drug paraphernalia, Count 2. In this appeal, he alleges (1) that the evidence presented at trial is insufficient to sustain his conviction in Count 1; (2) that the trial court erred in refusing to grant his request for a mistrial after improper character evidence was admitted by a witness at trial; and (3) that the trial court also erred in declining to apply any mitigating factors, resulting in a longer sentence. Upon consideration of the record and the applicable authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Francis X. Santore, Jr., Greenville, Tennessee, for the appellant, Ronald Lee West, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General ; C. Berkeley Bell, District Attorney General; and Richie Collins, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The Defendant was indicted by a Greene County grand jury on July 28, 2012, for the following offenses: Count 1, initiation of a process intended to result in the manufacture of methamphetamine, a Class B felony; and, Count 2, possession of drug paraphernalia, specifically, hypodermic syringes used to inject a controlled substance into the human body, a Class A misdemeanor. See Tenn. Code Ann. §§ 39-17-435, -425(a)(1). The case proceeded

to a jury trial on September 24, 2012.

The following facts, as relevant to this appeal, were adduced at the Defendant's trial. After receiving an anonymous tip regarding possible drug activity at the Super 8 motel off Exit 23 in Greene County, Drug Task Force Agents Tim Davis and Adam Arrington, who had experience and training in the detection of methamphetamine (meth) labs, went to the room where the Defendant and his co-defendant, Ms. Ashley Eggers, were staying to conduct a "knock and talk." Upon arrival, the agents requested permission to enter, explaining that they had received an anonymous tip regarding possible drug activity in the room. Ms. Eggers, who answered the door, consented to their entry into the room and subsequent search. The agents then testified that upon entering the motel room and conducting a cursory search, items that were known to be used in manufacturing meth were located. At that point, they evacuated the room and contacted a hazardous waste removal team, the meth task force, and the fire and ambulance departments. Robert Livingston, a member of the Tennessee Meth Task Force who was qualified as an expert in the manufacture of meth, testified that he and his team put on the required hazard suits and conducted a more thorough search of the room and premises. As a result of their search of the motel room and the trash areas surrounding the motel, additional items were located that bolstered the agents' preliminary conclusion that the room was being used as a meth lab. Agent Livingston testified that it was his expert opinion that the Defendant had been operating a "one pot" meth lab in the motel room. Agent Livingston also testified that all the items retrieved from the room were taken to a hazardous waste disposal site because many of the items used to make meth were highly flammable – such as the lighter fluid, corrosive, and dangerous to inhale. He further testified that the residue in some of the empty bottles was ammonium nitrate, a key component in the meth-making process.

The Defendant and Ms. Eggers, who the agents described as clearly being under the influence of drugs, were arrested and their phones confiscated. Approximately a day later, Agent Arrington, who was monitoring the Defendant's phone, received a text on that phone from an individual who expressed a desire to purchase meth. Agent Arrington went to meet this person at the Super 8 motel. As a result, the individual, later identified as Ms. Jennifer Watson, was arrested for attempting to purchase meth. Ms. Watson testified that the Defendant had sold her meth before and that she had contacted him that day to exchange Roxicodone, Sudafed, and $20 for two grams of meth. Mr. Brian Oliver, who had also contacted the Defendant's phone while it was being monitored by law enforcement, testified that he was contacting the Defendant that day to purchase meth, noting that he had gotten meth from the Defendant on a previous occasion. Ms. Eggers testified that she, the Defendant, and a man known only to her as Trevor had been making meth in the motel room the night and morning prior to the agents' arrival and that they had used all of the drugs they had made just before the agents knocked on the door. The Defendant exercised his right not

to testify and did not present any evidence, opting instead to move for a judgment of acquittal and stand on that motion.

At the close of proof, the trial court instructed the jury on the law governing the indicted offense as well as possession of drug paraphernalia – specifically, meth-making materials – as a lesser-included offense of Count 1. After deliberations, the jury convicted the Defendant as charged in the indictment but indicated on one of the verdict forms that it also found the Defendant guilty of the lesser-included offense in Count 1. The trial court asked the jury whether the verdict accurately represented each juror's vote and, if so, instructed them to raise their hands in assent; this inquiry was made separately for Counts 1 and 2. The record reflected that each juror raised his or her hand. The following exchange then occurred:

> The Court: All right. Your duties have now ended. I need to see the paperwork, and we need to get the Court's response. . . . Let me see those verdict forms, and you can have a seat.

> All right. There's two -- all right. You have two verdict forms for count one and two -- or count one. Count one, you have filled out the principal charge of initiation of a process to result in the manufacture of methamphetamine. Also, for count one you have filled out possession of drug paraphernalia. Okay. There can only be one guilty verdict form or not guilty -- well, there could be multiple not guilty verdict forms. There could be one for each of the principal and all the lessers. Count two, that verdict form, no problem. But we cannot have two guilty verdict forms for count one, okay? There can only be one -- there's the principal charge and then the lessers.

> [Foreman]: Okay. That's the question I asked because one of them said injectables, the other one said -- was the paraphernalia. I thought we were deliberating on two different items.

> . . . .

> The Court: Ok. So, I need to send you all back out and to tell me what you're going to do about -- there can only be one guilty form or -- do you understand that?

> [Foreman]: I don't think we have to go back because it's guilty --

> The Court: Well you're talking and the rest of them . . . aren't having

the ability to talk, okay? So you do need to go back. I'm going to send you back. I'll just send everything back with you and you'll come back and tell me what your verdict is again involving those two charges.

Once the jury retired to the jury room, defense counsel stated, "We have two inconsistent verdicts on count number one, so we respectfully move for a mistrial." Denying the motion, the trial court stated,

> Well, he announced the verdict. I found the verdict form that was filled out, but he announced the verdict in count one of initiation as guilty and then I found the form filled out, because there is two paraphernalias, so I'm sending them back to tell me what it is that they're going -- what their verdict will be. So your motion is overruled at this time.

Upon returning to the courtroom, the jury announced that it had reached a verdict of guilt as charged in the indictment. The trial court again polled the jury to confirm their assent to the verdicts, and the entire jury assented. The jury was then dismissed and a sentencing hearing scheduled.

At the sentencing hearing on January 22, 2013,[1] the trial court sentenced the Defendant as a Range I, standard offender to eleven years, in Count 1, and eleven months and twenty-nine days, in Count 2, concurrently, for an effective eleven-year sentence to be served in the Department of Correction (DOC). Subsequently, the Defendant filed a motion for a new trial, citing the same issues as alleged here on appeal, and that motion was denied via form order on March 28, 2013. The Defendant then perfected a timely appeal on April 1, 2013.

## ANALYSIS

On appeal, the Defendant contends (1) that the evidence presented at trial is insufficient to sustain his conviction in Count 1 for initiation of a process intended to result in the manufacture of methamphetamine; (2) that the trial court erred in refusing to grant his requests for a mistrial, first, after improper character evidence was admitted by a witness at trial and, second, after the jury returned inconsistent verdicts and was improperly instructed to return to the jury room to reconcile the inconsistency; and (3) that the trial court also erred in declining to apply any mitigating factors which resulted in the Defendant's receiving a

---

[1] This was the Defendant's second sentencing hearing. In response to a then-recent opinion of this court, the trial court elected to give the Defendant a new sentencing hearing after obtaining additional information.

longer sentence. The State responds (1) that the evidence is sufficient to sustain the convictions, (2) that the trial court properly exercised its discretion in denying the mistrial requests, and (3) that the trial court did not abuse its discretion in finding that no mitigating factors applied in the Defendant's case. We agree with the State.

## I. Sufficiency of the Evidence

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Tennessee Code Annotated section 39-17-435 proscribes the initiation of a process intended to result in the manufacturing of methamphetamine. It states as follows:

(a) It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.

(b) It shall not be a defense to a violation of this section that the chemical reaction is not complete, that no methamphetamine was actually created, or

that the process would not actually create methamphetamine if completed.

> (c) For purposes of this section, "initiates" means to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation.

Id. That section also provides that

> Expert testimony of a qualified law enforcement officer shall be admissible for the proposition that a particular process can be used to manufacture methamphetamine. For purposes of this testimony, a rebuttable presumption is created that any commercially sold product contains or contained the product that it is represented to contain on its packaging or labels.

Id.

Viewing it in a light most favorable to the State, we conclude that the evidence presented at trial is sufficient to sustain the Defendant's conviction in Count 1. The Defendant and Ms. Eggers were found in a motel room that two drug task force agents, Arrington and Davis, who were trained in meth lab detection, described as a "one-pot" meth lab. Both agents testified that the room contained a myriad of items that were commonly used to make meth, that both the Defendant and Ms. Eggers appeared to be under the influence of drugs, and that the Defendant had a large, distinctive burn on his hand that was consistent with cooking meth. Further, Ms. Eggers testified that she, the Defendant, and a man named Trevor had been making meth in the motel room the night and into the next morning prior to the agents' arrival and that they had used all of the drugs they had made just before the agents knocked on the door. In addition to Ms. Eggers's testimony, Ms. Watson, who was arrested after contacting the Defendant's phone to purchase meth, testified that the Defendant had sold her meth before and that she had contacted him that day to exchange Roxicodone, Sudafed, and money for the Defendant's providing her with meth. Further, Mr. Oliver testified that he had also contacted the Defendant that same day to purchase meth, noting that he had gotten meth from the Defendant on a previous occasion. Therefore, given this overwhelming evidence of the Defendant's guilt there was more than enough evidence from which the jury could conclude that the Defendant was guilty of initiating a process intended to result in the manufacture of methamphetamine.

-6-

## II. Denial of Mistrial

The Defendant contends that the trial court erroneously denied his motion for a mistrial on two occasions: (1) when Brian Oliver continued to testify about the Defendant's prior bad acts involving meth, despite being instructed not to do so mid-testimony and the trial court's issuance of a curative instruction; and (2) when the jury returned guilty verdicts in Count 1 for both the principal and lesser-included offense, and the trial court ordered them to return to the jury room, after previously being dismissed, to clarify the error. The State responds that the trial court properly exercised its discretion in denying both of the Defendant's requests for a mistrial. We agree with the State.

The decision whether to grant a mistrial is an issue entrusted to the trial court's sound discretion. See State v. McKinney, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). "Generally a mistrial will be declared in a criminal case only when there is a 'manifest necessity' requiring such action by the trial judge." State v. Gilley, 297 S.W.3d 739, 764 (Tenn. Crim. App. 2008) (quoting State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991)). Accordingly, a mistrial is an appropriate remedy when a trial cannot continue or a miscarriage of justice would result if it did. State v. Banks, 271 S.W.3d 90, 137 (Tenn. 2008) (citing State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004)). The burden of establishing the necessity for mistrial lies with the party seeking it. Id. (citing State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996)). The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict. Id. On appeal, this court will disturb a trial court's denial of a motion for mistrial only when there is an abuse of discretion. State v. Adkins, 786 S.W.2d 642, 644 (Tenn. 1990); Williams, 929 S.W.2d at 388 (Tenn. Crim. App. 1996). An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)); see also State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999).

### A. Admission of Improper Character Evidence

The Defendant argues that the trial court's issuance of a second curative instruction upon denying his request for a mistrial was insufficient to cure the damage that had been done by the repeated, improper character testimony. Tennessee Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of [the defendant] in order to show action in conformity with the character trait." Our state supreme court has stated that the "theory underlying Rule 404(b) is that the admission of other-acts evidence poses a substantial risk that a trier of fact may convict the accused for crimes other than those charged." State v. James, 81 S.W.3d 751, 758 (Tenn.

2002).

In the instant case, Mr. Oliver repeatedly, without objection, referenced prior dealings with the Defendant, involving both the sale and use of meth, and further stated that he had never tried meth prior to meeting the Defendant. Following cross-examination, the trial court instructed the jury to disregard statements Mr. Oliver made about other crimes or bad acts involving the Defendant. When Mr. Oliver again mentioned the Defendant's prior acts involving meth, the trial court, sustaining the Defendant's objection, repeated the earlier curative instruction and admonished the jury not to consider any of the improper character evidence testified to by Mr. Oliver. The trial court also polled each juror, inquiring whether they could and would follow the curative instruction; all the jurors indicated that they would follow the instruction. We agree that admission of the Defendant's prior bad acts without a 404(b) hearing was improper; however, it is well-settled that "apt instructions may sometimes cure improper evidence and alleviate the need for a mistrial." State v. Thomas Alvin Carter, E2005-01163-CCA-R3-CD, 2006 WL 1544540, at *4 (Tenn. Crim. App. June 7, 2006); see Millbrooks, 819 S.W.2d at 443 ("Objections interposed by the appellant's counsel were sustained[,] and the trial judge gave curative instructions to the jury."). It is presumed that the jury followed the trial court's instructions not to consider inadmissible evidence. Klaver v. State, 503 S.W.2d 946, 950 (Tenn. Crim. App. 1973). As such, we cannot conclude that the trial court abused its discretion in concluding that there was no manifest necessity for a mistrial and opting, instead, to give curative instructions to remedy the improper testimony.

### B. Inconsistent Jury Forms

The Defendant contends that the "conflicting jury forms" submitted indicate that "the jury verdict was not unanimous" and that it violated principles of double jeopardy for the trial court to allow the jury to re-enter the jury room and reconsider the verdict, emphasizing that the trial court had discharged the jury prior to noticing the conflicting jury forms. The Defendant cites Tennessee Rule of Criminal Procedure 31 and State v. Houston, 328 S.W.3d 867 (Tenn. Crim. App. 2010), in support of his argument. Concluding that this issue is without merit, we hold that the trial court did not err in denying the Defendant's request for a mistrial on double jeopardy grounds.

Tennessee Rule of Criminal Procedure 31 states that "[t]he jury's verdict shall be unanimous." As a preliminary matter, we note that we can find no evidence in the record to support the Defendant's contention that the jury verdicts were not unanimous. Each juror was polled and indicated his or her assent to the verdicts. Thus, the Defendant's reliance on Tennessee Rule of Criminal Procedure 31 is misplaced.

Turning to the double jeopardy issue, both the United States and Tennessee constitutions protect an accused from being "twice put in jeopardy of life or limb" for "the same offence." U.S. Const. Amend. V; Tenn. Const. art. 1, sec. 10. The state and federal provisions, which are quite similar in verbiage, have been given identical interpretations. See Houston, 328 S.W.3d at 875 (citing State v. Waterhouse, 8 Tenn. (1 Mart. & Yer.) 278, 284 (1827). Regarding the double jeopardy clause, the Supreme Court has observed,

> Our cases have recognized that the Clause embodies two vitally important interests. The first is the "deeply ingrained" principle that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." The second interest is the preservation of "the finality of judgments."

Yeager v. United States, 557 U.S. 110, 117-18 (2009) (citations omitted). Our state supreme court has "noted many times, three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense." State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (citing Whalen v. United States, 445 U.S. 684, 688 (1980); United States v. Wilson, 420 U.S. 332, 343 (1975); North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Despite the convoluted nature of the Defendant's argument, we discern that the second principle, if any, is at issue in the instant case.

As previously noted, the Defendant cites State v. Houston in support of his argument; however, we conclude that the facts in Houston are readily distinguishable from those in the Defendant's case. In Houston, the jury reported that it was unable to reach a unanimous verdict as to the principal offense or the lesser-included offenses. Upon further questioning by the court, the jury foreman stated, "We did go down the list and try to consider some of the secondary crimes. There were a couple that we were able to vote unanimously on." Houston, 328 S.W.3d at 871. The jury was polled and all agreed with the foreman's assessment of their verdicts. The trial court then sent the jury back to list on the form some of the lesser-included offenses it had reached a unanimous verdict on, over the State's objection. Upon the jury's return, they noted that they were unable to reach a verdict regarding two of the principal offenses, had reached a not guilty verdict on the remaining principal offenses, and had found the defendant not guilty of some of the lesser-included offenses, being unable to reach a verdict on others. The jury was dismissed without a finding of manifest necessity, and the defendant's subsequent request for dismissal on double

jeopardy grounds was granted by this court.

In contrast, the jury in the Defendant's case never reported an inability to reach a unanimous verdict. The jury convicted the Defendant on both counts in the indictment and announced the same in open court. While the jury did indicate on the verdict form that it found the Defendant guilty of both the principal and the lesser-included offense in Count 1, that was due to a misunderstanding as to the number of possession of drug paraphernalia charges. The trial court explained that the Defendant could not be found guilty of both the principal and the lesser-included offense in Count 1 and had the jury return to the jury room to clarify the inconsistency. While the trial court did state that the jury's duty was complete before it noticed the duplicate convictions in Count 1, the jury was still present and empaneled when the trial court noticed the error and sought clarification of such. This is further illustrated by the trial court's instruction after stating that the jury's duty was complete: "Your duties have now ended. I need to see the paperwork, and we need to get the Court's response. . . . Let me see those verdict forms, and you can have a seat." Again, this fact is also distinguishable from Houston because the jury in that case had been dismissed approximately one month prior to the defendant's request for a dismissal of the greater charges on double jeopardy grounds. See id. at 870, 872-73. Furthermore, the trial court "has both the power and the duty to require that the jury correct or amend an improper or incomplete verdict." Jones v. State, 569 S.W.2d 462, 464 (Tenn. 1978); see also State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993) ("Thus, the fact that the trial judge had available the preferred alternative of instructing the jury further and having them continue to deliberate for the purpose of returning a consistent verdict precludes the finding of a manifest necessity to summarily conclude the trial."). Accordingly, we glean no double jeopardy violation because the jury found the Defendant guilty of the principal offense in Count 1 from the outset, and there was no attempt by the tribunal to "retry" the Defendant for the "same offense." Therefore, this issue is without merit.

### III. Length of Sentence

The Defendant contends that the trial court erroneously refused to apply the following mitigating factors he requested at the sentencing hearing: that the defendant's criminal conduct neither caused nor threatened serious bodily injury and that substantial grounds exist tending to excuse or justify the defendant's criminal conduct though failing to establish a defense. He insists that this erroneously resulted in his receiving a longer sentence. The State responds that the trial court did not abuse its discretion in determining the Defendant's sentence.

The Sentencing Reform Act was enacted in order "to promote justice" by ensuring that every defendant "be punished by the imposition of a sentence justly deserved in relation

to the seriousness of the offense." Tenn. Code Ann. § 40-35-102. In order to implement the purposes of the Sentencing Reform Act, trial courts must consider several sentencing principles. The sentence imposed for an offense "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4). Thus, before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). Even if the trial court has misapplied an enhancement or mitigating factor, the sentence will be upheld if "there are other reasons consistent with the purposes and principles of sentencing, as provided by statute. . . ." Bise, 380 S.W.3d at 706. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In the instant case, the trial court applied the following enhancement factors: (1) the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, noting that he had two prior felony convictions and multiple misdemeanor convictions and probation violations; (2) the Defendant was a leader in the commission of an offense involving two or more criminal actors, noting that the facts indicated that there was another person in the room and that the Defendant was the one making the meth; (10) the Defendant had no hesitation about committing a crime when the risk to human life was high, noting that he was making meth in a motel room with lighter fluid and other explosive materials and that there could have been a fire or explosion; and (13) at the time the felony was committed, the Defendant was

released on bail for criminal simulation. See Tenn. Code Ann. § 40-35-114 (1), (2), (10), (13)(A). The trial court declined to apply the mitigating factors requested by the Defendant, that the Defendant's criminal conduct neither caused nor threatened serious bodily injury and that substantial grounds existed tending to excuse or justify the Defendant's criminal conduct though failing to establish a defense. See Tenn. Code Ann. § 40-35-113 (1), (3). In so doing, the trial court explained,

> I don't find that those two mitigating factors apply. You say that the criminal conduct neither caused nor threatened serious bodily injury. There could have been an explosion, there could have been a fire in this motel with all these people sleeping and who knows what could have happened. I can't find that that applies.

> Substantial grounds existing intending to excuse his criminal conduct, being because he has a drug addiction. I can't find that that's a substantial grounds to excuse criminal conduct.

Our review of the record reveals that the trial court considered the principles of sentencing and gave detailed reasons supporting its imposition of an eleven-year sentence, including why it was applying certain enhancement factors and why the proposed mitigating factors were inapplicable. We note that the trial court does appear to have misapplied enhancement factor (13)(A) because there is no evidence in the record that the Defendant was on bail for the criminal stimulation charge when the offense now at issue was committed; however, it is well-settled that even if the trial court misapplies an enhancement factor, the sentence will be upheld as long as "there are other reasons consistent with the purposes and principles of sentencing" supporting the trial court's determination. Bise, 380 S.W.3d at 706. Here, the trial court properly found that three other enhancement factors applied, and those factors are more than sufficient to justify the trial court's imposition of an eleven-year sentence. Further, the Defendant, convicted of a Class B felony as a Range I, standard offender, faced a sentencing range of eight to twelve years; the Defendant's sentence fell within that range. Therefore, the trial court's sentencing determination is presumed reasonable. Because the Defendant has failed to rebut this presumption, he is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE